## APPEAL OF GRESS MANUFACTURING CO.

Docket No. 3102. Submitted October 19, 1925. Decided February 24, 1926.

    1. The Board has no jurisdiction to consider whether any overpayment of tax has been made in any year not considered in the deficiency letter for the purpose of determining a credit to be applied against the deficiency determined by the deficiency letter.

    2. Adjustment of invested capital denied upon the evidence.

*Ernest W. Mitchell, Esq.*, for the taxpayer.
*Benj. H. Saunders, Esq.*, for the Commissioner.

Before GREEN and PHILLIPS.

Taxpayer appeals from the determination of a deficiency of $32,-786.89 in income and profits taxes for 1920.

FINDINGS OF FACT.

1. Taxpayer is a Florida corporation with its principal office in Jacksonville. It keeps its accounts on the accrual basis and files its income-tax returns on the basis of the calendar year.

2. On July 31, 1916, the taxpayer's books of account showed that the New York & Florida Lumber Co. was indebted to the taxpayer in the amount of $27,401.31. The taxpayer charged off this account on its books as a worthless debt as follows: July 31, 1916, $7,401.31; December 31, 1916, $9,000; December 31, 1917, $11,000; and upon its income-tax returns it claimed $16,401.31 as a deduction for 1916 and $11,000 as a deduction for 1917.

3. The Commissioner, in his final determination of the taxpayer's tax liability for the taxable years 1915, 1916, and 1917, allowed deductions on account of said indebtedness as follows:

| | |
|---|---:|
| 1915 | $3,750.00 |
| 1916 | 12,651.31 |
| 1917 | 11,000.00 |

4. The Commissioner, in his final determination of the taxpayer's tax liability for the year 1917, disallowed the claim of the taxpayer that $16,401.31, the amount of said indebtedness charged off on the taxpayer's books in 1916, should be restored to invested capital for 1917 and allowed as a deduction in computing taxpayer's net income for that year. The Commissioner determined the tax liability for 1917 at $38,008.60, and assessed an additional tax for 1917 of $34,122.38, which was paid on October 26, 1923.

5. The Commissioner, in the final determination of the taxpayer's tax liability for 1918, in computing invested capital, adjusted the deduction therefrom because of 1917 tax due and payable, on the basis of $38,008.60 as the correct amount of tax due for 1917, and assessed an additional tax for 1918 of $7,355.11. Of this additional assessment, $6,031.18 was offset by the credit of an overpayment of 1919 taxes, and $1,323.93 was paid on March 23, 1925.

6. The Commissioner, in the final determination of the taxpayer's tax liability for the year 1920, in computing invested capital for 1920, deducted therefrom the full amount of unpaid additional assessments of tax for 1917 and 1918, in the amount of $34,422.38 for 1917 and $7,355.11 for 1918.

7. The Commissioner, in the final determination of taxpayer's tax liability for the year 1920, in computing taxable income, allocated thereto sales in the amount of $502,651.57, less costs in the amount of $422,355.93, a net addition to income for 1920 in the amount of $80,295.64, which sales and costs the taxpayer had previously reported in its income-tax return for 1921.

8. In its income-tax return for 1921 taxpayer reported taxable income of $21,564.61, which included the sales and costs subsequently transferred by the Commissioner to 1920 income, as set forth in the preceding paragraph. Taxpayer reported and paid income and profits tax for 1921 of $1,956.46.

9. The taxpayer filed its income-tax returns and paid the tax due thereon in due course for the years 1922 and 1923, said returns showing taxable income and tax liability as follows:

| Year. | Taxable income. | Tax. |
| --- | --- | --- |
| 1922 | $55,889.11 | $6,986.12 |
| 1923 | 113,202.89 | 14,150.36 |

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

PHILLIPS: The taxpayer does not question the adjustment of its 1920 income made by the Commissioner. It does question the computation of the invested capital and the computation of the deficiency.

It is the contention of the taxpayer that its 1917 and 1918 income tax liability was incorrectly computed by the Commissioner in the respects hereinafter set forth, and that, to the extent that such compuation of tax was excessive, its invested capital for 1920 was erroneously reduced. The 1917 and 1918 taxes, as computed by the Commissioner, have been paid in full by the taxpayer, but the time within which it may file a claim for refund or bring suit to recover the additional assessments has not yet expired. The contention of the taxpayer appears to be well taken, provided the 1917 and 1918 taxes were in fact erroneously computed.

It is taxpayer's contention that the 1917 tax was erroneous because the debt of $27,401.31, due it on July 31, 1916, from the New York & Florida Lumber Co., was ascertained to be worthless in 1917 and should have been allowed in whole as a deduction in that year rather than allowed in part in each of the years 1915, 1916, and 1917, as was done by the Commissioner. It was incumbent upon the taxpayer to establish that the debt claimed by it existed in 1917 and was ascertained to be worthless in that year. After a very careful consideration of the record, we can not find that the taxpayer has sustained that burden.

As was pointed out to counsel before the close of the hearing, the testimony with reference to the transactions between the tax-

payer and New York & Florida Lumber Co. does not present a connected story. It appears that the New York & Florida Lumber Co. owned 28,000 acres of timber land and that the taxpayer was engaged in buying and selling timber at wholesale. The officers of the two companies appear to have been the same, and the same individual owned more than a majority of the stock in each. The taxpayer entered into some arrangement with the New York & Florida Lumber Co., the details of which are not in evidence, by which the taxpayer was to take lumber from lands of that company. It expended over $28,000 in placing mills, rails, and other property upon these timber lands, giving rise to the debt here in question. During 1916 taxpayer sold a part of this personal property and credited the proceeds to the New York & Florida Lumber Co. account. During the years 1916 and 1917 taxpayer was removing timber from the lands of that company, but the only credit which it gave that company for timber so removed was $856.15 in 1916 and $1,999.20 in 1917. There is testimony to the effect that there was a mortgage upon the property which required that there should be paid to the trustee under the mortgage $3 for each 1,000 feet of timber that was removed from the property. The sums credited by taxpayer to the New York & Florida Lumber Co. appear to have been paid to the trustee and the company debited with such payments, so that during the years in question the only amounts applied in reduction of the indebtedness were those realized from the sale of the personalty placed upon the property by the taxpayer. The price to be paid for timber removed was fixed by the same person acting for both corporations.

In 1917 the bonds issued under the mortgage came into the hands of interests unfriendly to the taxpayer. The situation which resulted is described in a letter from one officer of the taxpayer to another, as follows:

* * * He [the bondholder] demands that we cease cutting all timber and cross ties on the New York and Florida Lumber Co.'s property at once.

If we will not do this he will start a lot of law suits against us. He claims he has purchased about all the bonds of the above named company and is a real owner. He is willing to cancel all claims he might have against our company provided we stop cutting now, and turn the property over to him.

I told him we would comply with his request and would stop, and I would advise you accordingly.

Operations were accordingly abandoned in November, 1917, and no other amounts were realized by the taxpayer after that date.

Even though it be conceded that the taxpayer has established that after that date the New York & Florida Lumber Co. was unable to meet its indebtedness and that its property was worth less than

its bonds, we do not feel that we would be justified, in the circumstances of this appeal, in disturbing the action of the Commissioner in writing off the so-called indebtedness over the period during which timber was being removed by the taxpayer. The evidence is too indefinite to permit us to determine satisfactorily what was the true situation.

Taxpayer claims that, by reason of the adjustment of sales from 1921 to 1920, a net loss resulted in 1921, deductible from 1922 and 1923 income, and that a refund is due it for those years, which should be credited to reduce the 1920 deficiency. The returns for those years have not been audited by the Commissioner and the deficiency letter sent to the taxpayer by the Commissioner relates only to the year 1920. In our opinion, this Board has no jurisdiction to pass upon the tax liability of the taxpayer for those years to determine whether any refund is due which can be used as a credit against the deficiency for 1920 determined by the Commissioner.

Under section 274 of the Revenue Act of 1924, this Board is authorized to review an appeal from the determination of a deficiency by the Commissioner and to determine whether or not there is such a deficiency. It has no jurisdiction over refunds, *Appeal of Everett Knitting Works*, 1 B. T. A. 5; nor is the deficiency in question in this appeal a net deficiency arising from a determination by the Commissioner of a deficiency for one year and an overassessment for another, where both years had been audited by the Commissioner, as was the situation in the *Appeal of E. J. Barry*, 1 B. T. A. 156. We should be going beyond the power vested in this Board were we to go into the tax liability for a year not audited by the Commissioner in order that we might determine whether there was a refund to be applied as a credit against the deficiency determined by him.